## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GARY PETERSON,                                    :
    Plaintiff,                              :       No. 3:22-CV-00026 (VLB)
                                            :
    v.                                      :
                                            :
KILOLO KIJAKAZI,                                  :       January 20, 2023
Acting Commissioner of Social Security,           :
    Defendant.                              :
                                            :

## MEMORANDUM OF DECISION GRANTING MOTION FOR ORDER REVERSING THE DECISION OF THE COMMISSIONER OR IN THE ALTERNATIVE MOTION FOR REMAND FOR A HEARING, AND DENYING MOTION AFFIRMING THE DECISION OF THE COMMISSIONER

Before the Court is an administrative appeal filed by Plaintiff Gary Peterson ("Claimant") pursuant to 42 U.S.C. § 405(g) following the denial of his applications for Title II disability insurance benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") benefits.[1]  Claimant moves for an order reversing the decision of the Commissioner of the Social Security Administration (the "Commissioner") on the basis that Administrative Law Judge ("ALJ") Eskunder Boyd erred by (a) finding at Step Three of the sequential evaluation process that Claimant's chronic heart failure does not equal Listing 4.02, (b) improperly evaluating medical opinion evidence, and (c) incorrectly determining Claimant's residual functional capacity and subsequently

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]."  42 U.S.C. § 405(b)(1).  The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJ").  20 C.F.R. §§ 404.929 *et seq.*  A claimant can appeal an ALJ's decision to the Social Security Appeals Council.  *Id.* §§ 404.967 *et seq.*  If the Appeals Council declines review or affirms an ALJ opinion, the claimant may appeal to the United States District Court, which "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

failing to find him disabled under the Medical Vocational Guidelines.  (Pl.'s Mem. Supp. Mot. Reverse ("Pl.'s Mem.") 6–15, ECF No. 15.)  Claimant asks the Court to reverse the Commissioner's decision to deny benefits or, in the alternative, to remand so that Claimant may receive a full and fair hearing.  (Pl.'s Mot. Reverse 1, ECF No. 15.)  The Commissioner moves to affirm the ALJ's decision, arguing the decision is supported by substantial evidence.  (Def.'s Mem. Supp. Mot. Affirm ("Def.'s Mem.") 5–14, ECF No. 17.)

For the following reasons, Claimant's Motion for Order Reversing the Decision of the Commissioner or, in the Alternative, Motion for Remand for a Hearing is GRANTED, and the Commissioner's Motion for an Order Affirming the Decision of the Commissioner is DENIED.

## I.    BACKGROUND

Claimant was born on December 16, 1969 and alleges his disabilities began on July 1, 2019 when he was 49 years old.  (R. 28, 31.)[2]  On February 20, 2020, Claimant applied for both DIB and SSI benefits.  (R. 176–88.)  Claimant's application was initially denied on June 16, 2020, (R. 105–08), and again upon reconsideration on October 8, 2020, (R. 120–26).

Claimant requested a hearing and appeared via telephone before ALJ Boyd on February 18, 2021.  (R. 37–65.)  On February 23, 2021, the ALJ determined Claimant was not disabled under the meaning of the Social Security Act.  (R. 23–32.)  Claimant appealed the decision of the ALJ on March 4, 2021, (R. at 173–75), but the Appeals

---

[2] When citing to the certified administrative record, (ECF No. 13), the Court will use "R."

Council denied his request for review on November 9, 2021, rendering the ALJ's decision final, (R. 5–10).

Claimant filed this action on January 6, 2022.  (Compl., ECF. No. 1.)  Claimant filed a Motion for Order Reversing the Decision of the Commissioner or, in the Alternative, Motion for Remand for a Hearing.  (Pl.'s Mot. Reverse.)  The Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner.  (Comm'r Mot. Affirm, ECF No. 17.)

      A.    <u>Relevant Medical History</u>

The medical record reflects that Claimant suffers from, *inter alia*, diabetes mellitus, chronic heart failure/cardiomyopathy, and obesity.  The Court will address Claimant's relevant medical history only as it relates to issues raised by the parties.

      B.    <u>ALJ Hearing</u>

At the telephonic hearing before the ALJ, the Claimant testified at length about the severity of his health conditions and the impact they have had on his life, particularly his ability to work.  (R. 47–53.) Also, during the hearing, a vocational expert appeared.  (R. 57–64.)  She testified that a hypothetical person of Claimant's age, education, and vocational background, with the capacity to perform only light work, would not be able to do Claimant's past relevant work.  (R. 59.)  The vocational expert testified to other jobs in the national economy that the hypothetical individual could perform, including the jobs of garment sorter, ticket maker, and shirt folder. (*Id.*) The vocational expert also testified that, if the individual in the hypothetical required a sit/stand option whereby he could sit for thirty to sixty minutes, stand for five minutes, and then resume sitting, and was further limited to standing and

walking for up to four hours and sitting for up to six hours total, the jobs she previously identified would still remain available.  (R. 60.)

C. Medical Opinion Evidence

Three medical opinions were presented in the record before the ALJ: an opinion offered by Claimant's treating cardiologist and opinions provided by two state agency medical consultants.

The first state agency medical consultant, Dr. Edward Ringel, issued two Disability Determination Explanation reports[3] on June 15, 2020, at the initial level of consideration of Claimant's applications.  (R. 74–87.)  The assessed medical evidence included records from Claimant's primary care physician, Dr. Tao-Nan Chi; Claimant's endocrinologist, Dr. Pamela Randolph; and Claimant's cardiologist, Dr. Boris Sheynberg.  (R. 74–75, 81–82.)  Dr. Ringel found that Claimant suffers from multiple medically determinable impairments, including severe impairments of heart failure, obesity, and diabetes mellitus.  (Id.)  Dr. Ringel found that Claimant's statements about the intensity, persistence, and functionally limiting effects of his symptom of shortness of breath were substantiated by the objective medical evidence.  (R. 77, 84.) When evaluating Claimant's residual functional capacity ("RFC"),[4] Dr. Ringel found that Claimant has exertional limitations, including only occasional lifting of up to twenty pounds and frequent lifting up to ten pounds.  (R.

---

[3] Because Claimant filed concurrent DIB and SSI applications, separate reports were generated for each application.  The content of the two reports is effectively identical.  (R. 74–87.)

[4] A claimant's residual functional capacity "is the most [he] can still do despite [his] limitations," 20 C.F.R. §§ 404.1545, 416.945, "in an ordinary work setting on a regular and continuing basis," see Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996)).  "A 'regular and continuing basis' means [eight] hours a day, for [five] days a week, or an equivalent work schedule."  SSR 96-8p, 1996 WL 374184, at *2.

77, 84.)  He also found that Claimant can only stand and/or walk for a total of two hours, and can only sit for about six hours during an eight-hour workday.  (*Id.*) Claimant's postural limitations include occasionally being able to stoop, kneel, crouch, crawl, and climb ramps or stairs, and Claimant is never able to climb ladders, ropes, or scaffolds.  (R. at 78, 85.)  Dr. Ringel explained Claimant's exertional and postural limitations were a result of Claimant's obesity and cardiomyopathy.  (R. 78, 85.)  He also found Claimant should avoid thermal extremes due to having cardiac disease.  (*Id.*)  Dr. Ringel found that the medical evidence of record was sufficient to support his assessment of Claimant's residual functional capacity ("RFC"). (R. 76, 83.)

The second state agency medical consultant, Dr. Gerald Fette, issued his evaluations on October 8, 2020, upon reconsideration from the initial denial of Claimant's applications.  (R. 90–103.)  Dr. Fette assessed the same evidence as Dr. Ringel, along with additional medical evidence received from Dr. Chi and Dr. Sheynberg.  (*Compare* R. at 90, 97 *with* R. 74–75, 81–82.)  Claimant presented no new allegations or changes in condition upon reconsideration.  (R. 95, 102.)  Dr. Fette agreed with Dr. Ringel that Claimant suffered from severe heart failure, obesity, and diabetes, but also found an additional severe impairments of cardiomyopathy and essential hypertension.  (R. at 92, 99.)  Dr. Fette made most of the same findings as did Dr. Ringel in his evaluation of Claimant's RFC, but he differed in finding that, in addition to avoiding extreme cold and extreme hot temperatures, Claimant must also avoid concentrated exposure to irritants such as fumes, odors, dusts, gases, and poor ventilation, as well as avoid hazards (e.g., machinery, heights).  (R. at 94, 101.)

Dr. Fette also concluded that Claimant can only stand and/or walk for a total of two hours, and sit for about six hours during an eight-hour workday. (*Id.*) Dr. Fette explained that his conclusions regarding Claimant's exertional, postural, and environmental limitations were supported by Claimant's history of dilated cardiomyopathy with reduced ejection fraction, complicated by obesity, diabetes, and hypertension. (*Id.*) Dr. Fette found that the limitations he identified, as well as Claimant's alleged onset date, were supported by the evidence in the record. (R. 95, 102.)

Finally, the ALJ considered the medical opinion of Claimant's treating cardiologist, Dr. Sheynberg. In what is available in the record of Dr. Sheynberg's opinion, he indicated that Claimant can only occasionally push or pull with his hands, and can frequently operate his foot controls. (R. 337.) Dr. Sheynberg indicated that Claimant can frequently use his hands for handling, feeling, fingering, and reaching. (*Id.*) Dr. Sheynberg further provided that Claimant can only occasionally lift and carry up to, and never more than, ten pounds of weight. (R. 334.) He found Claimant could never tolerate extreme cold, extreme heat, dust, odors, fumes, pulmonary irritants, vibrations, humidity and wetness, and unprotected heights.[5] (R. 338.) Dr. Sheynberg found Claimant can occasionally move mechanical parts, and frequently operate a motor vehicle. (R. 338.) He also found that Claimant would likely be off task for twenty percent of a typical workday, and he anticipated that on average, Claimant's impairments or treatments would cause him to be absent from work more than four days per month. (R. 335, 338.)

---

[5] A checkbox labeled "Other (Identify)" was also checked in the section describing Claimant's environmental limitations, but no other limitation was identified. (R. 338.)

### D. The ALJ's Decision

On February 23, 2021, the ALJ made several findings in his decision, which are subject to review by this Court.  First, the ALJ found that Claimant meets the insured status requirements of the Social Security Act through June 30, 2023.  (R. 25.)  Second, the ALJ found that Claimant had not engaged in substantial gainful activity since July 1, 2019, his alleged onset date.  (*Id.*)  Third, the ALJ found that Claimant has severe impairments consisting of cardiomyopathy/chronic heart failure, diabetes, and obesity.  (R. 26.)  The ALJ concluded that these medically determinable impairments significantly limit Claimant's ability to perform basic work activities, as required by Social Security Ruling ("SSR") 85-28.  (*Id.*)  Fourth, the ALJ found Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of any listed impairments under Appendix 1 of 20 C.F.R. Part 404, Subpart P.[6]  (*Id.*)  The ALJ considered Claimant's impairments under Listing 4.02 (chronic heart failure) and Listing 9.00 (endocrine disorders), and found Claimant's impairments did not satisfy Listing 9.00 because no other bodily system was implicated to listing level due to complications from his diabetes.  (*Id.*)  The ALJ found that Listing 4.02 was not met because there are no findings in the medical evidence for systolic or diastolic failure resulting in persistent symptoms of heart failure, three or more episodes of acute congestive heart failure within twelve

---

[6] Appendix 1 to Subpart P of 20 C.F.R. § 404 provides a list of enumerated disabilities recognized by the Social Security Administration's regulations.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The [L]istings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing <u>any</u> gainful activity, not just 'substantial gainful activity.'"  *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct. 885, 892, 107 L. Ed. 2d 967 (1990) (emphasis in original) (citing 20 C.F.R. § 416.925(a)).

months, or inability to perform on an exercise tolerance test as described in Listing 4.02(B)(1)-(3).  (*Id.*)  Fifth, the ALJ found Claimant has the RFC to perform "light work[,]" with the following limitations:

> He must never climb ladders, ropes, or scaffolds. Standing and walking is limited to 4 hours, and sitting limited to 6 hours, in an 8-hour workday.  He has a sit/stand option in which he may sit for 30 to 60 minutes, alternate to a standing position for 5 minutes, and then resume sitting. . . .  He must never climb stairs. He may no more than occasionally climb ramps, balance, stoop, and crouch.  He must never kneel or crawl.  There must be no work in exposure to heat extremes.

(*Id.*)  Sixth, the ALJ found Claimant is unable to perform any past relevant work.  (R. 30.)  Seventh, the ALJ found Claimant was 49 years old, which is defined as a "younger individual," on his alleged onset date.  (R. 31.)  The ALJ noted that the Claimant subsequently turned 50 years old by the time the ALJ issued his decision, changing age category to "closely approaching advanced age."  (*Id.*)  Eighth, the ALJ found, considering Claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Claimant can perform.  (*Id.*)  For that reason, the ALJ concluded that Claimant is not disabled, as defined by the Social Security Act.  (R. 32.)

The ALJ also evaluated the medical opinions of record, finding Dr. Sheynberg's opinion "not persuasive[.]"  (R. 29.)  With respect to the state agency medical consultants, the ALJ found both their opinions to be only "partially persuasive[.]"  (R. 30.)  While accepting Dr. Ringel and Dr. Fette's findings that were consistent with light work, the ALJ rejected the limitation found by both consultants who opined that Claimant can stand and/or walk for a total of only two hours in an

eight-hour workday.  (*Id.*)  The ALJ found that limitation to be "not consistent with the findings for only trace edema and normal gait[.]"  (*Id.*)

## II.   LEGAL STANDARD

The Social Security Act establishes that benefits are payable to individuals who have a disability.    42 U.S.C. § 423(a)(1).    Disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  § 423(d)(1).

To determine whether a claimant is disabled within the meaning of the Social Security Act, an ALJ must follow a five-step sequential evaluation process as promulgated by the Commissioner:

1. First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity ("Step One").

2. If he is not, the Commissioner next considers whether the claimant has a "severe impairment," or "combination of impairments that is severe and meets the duration requirement," which significantly limits his physical or mental ability to do basic work activities ("Step Two").

3. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations ("Step Three").  If the claimant has such an impairment, the Commissioner will consider him disabled without considering factors such as age, education, and work experience.

4. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual

functional capacity to perform his past relevant work ("Step Four").

5. Finally, if the claimant is unable to perform his past relevant work, the Commissioner then determines whether there is other work which the claimant could perform ("Step Five").

20 C.F.R. §§ 404.1520; 416.920.[7]  The claimant bears the burden of proof in the first four steps of the sequential inquiry.  *Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022).  At Step Five, the burden shifts to the Commissioner to show that other work exists in significant numbers in the national economy that the claimant can do.  *Id.*; 20 C.F.R. § 404.1560(c)(2).

If an ALJ determines that a claimant is not disabled and the Commissioner upholds the decision, the claimant has the opportunity to seek judicial review from the district court.  *See* 42. U.S.C. § 405(g).  A district court reviewing a final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) "is performing an appellate function."  *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).  "On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)).  "'Substantial evidence' is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Lamay v. Astrue*, 562 F.3d 503, 507 (2d Cir. 2009) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).  It is a "very deferential standard of review"

---

[7] Claimant filed applications for both DIB and SSI, which are regulated under 20 C.F.R. §§ 404.1 *et seq.* and 20 C.F.R. §§ 416.101 *et seq.*, respectively.  The parallel regulations correspond to the last two digits of the section (e.g., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).  As the regulations for DIB and SSI are virtually identical and do not differ materially for the purposes of this case, hereinafter reference will be made only to the DIB regulations in the interest of conciseness.

which dictates that a court can reject the facts found by an ALJ "only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)  (quotations and citations omitted).  In reviewing the Commissioner's decision, a district court must "consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  "If there is substantial evidence to support the ALJ's determination, it must be upheld." *Selian*, 708 F.3d at 417.

> Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles.

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  Thus, the Court may set aside an ALJ's determination that a claimant is not disabled if the decision is based on legal error.  *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).  Legal error is on its own enough to overturn an ALJ's decision, even if the decision is supported by substantial evidence.  *See Burgess v. Astrue*, 537 F.3d 117, 127-28 (2d Cir. 2008).

III.   DISCUSSION

Claimant raises three arguments in its motion to reverse/remand.   First, Claimant argues that the ALJ erred in his analysis at Step Three by failing to find that Claimant's numerous medical conditions equal the requirements set forth at Listing 4.02(B)(2).  (Pl.'s Mem. 11–13.)  Second, Claimant argues that the ALJ failed in his evaluation of the medical opinions in the record by substituting his lay opinion for

that of all of the physicians.  (*Id.* 6–11.)  Finally, Claimant argues that the ALJ erred by rejecting the two-hour standing and/or walking limitation opined by both Dr. Ringel and Dr. Fette, and as a result failed to evaluate Claimant under the Medical Vocational Guidelines as limited to sedentary work.  (*Id.* 13–15.)  The Commissioner disputes each of Claimant's arguments, contending that substantial evidence supports the ALJ's findings at Step Three, his evaluation of the medical opinions, and his findings regarding Claimant's RFC and subsequent analysis under the Medical Vocational Guidelines.  (Def.'s Mem. 5–14.)  The Court will address each argument below.

### A.   Medical Equivalence to Listing 4.02(B)(2)

The Court will first address Claimant's Step Three argument.  Claimant argues that the ALJ erred by finding Claimant's severe heart impairment does not satisfy Listing 4.02.[8]  (Pl.'s Mem. 11–13.)  The required level of severity under Listing 4.02 is met when the requirements in both 4.02(A) and 4.02(B) are satisfied.  20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 4.02.  The parties agree with the ALJ's finding that Listing 4.02(A)(1) is satisfied by Claimant's impairments.[9]  (Pl.'s Mem. 12–13; Def.'s Mem. 7.)  Furthermore, neither party argues that Claimant's impairments meet the requirements set forth in Listing 4.02(B). Claimant instead argues that his multiple

---

[8] Claimant does not contest on appeal the ALJ's finding that his diabetes does not meet the requirements set forth in Listing 9.00.

[9] Listing 4.02(A)(1) requires the medically documented presence of "[s]ystolic failure . . . with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure)[.]" 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 4.02(A)(1).  The ALJ indicated in his decision that Claimant meets the requirements set forth in Listing 4.02(A)(1).  (R. at 29 ("The records do show an acute cardiac failure, with early readings that fit within the listing criteria for [L]isting 4.02(A)(1).")).

comorbid medical conditions equal the severity required to satisfy Listing 4.02(B)(2), and therefore the ALJ erred by finding that Claimant's impairments do not satisfy Listing 4.02. (*Id.* 11–13.) The Commissioner argues that medical equivalency is not established simply because a claimant's impairments are close to meeting the requirements of a listing. (Def.'s Mem. 7–8.) The Commissioner maintains that Claimant has not met his burden of proof by producing evidence to establish medical equivalency. (*Id.*)

At Step Three of the sequential evaluation process, an ALJ must determine whether a claimant's impairment or impairments meet or equal an impairment listed at Appendix 1 to Subpart P of 20 C.F.R. § 404. *See* 20 C.F.R. § 404.1520(d). If so, and if the impairment is of sufficient duration, the claimant is deemed disabled and the inquiry ends without the ALJ proceeding to Steps Four and Five. *Koch v. Colvin*, 570 Fed. Appx. 99, 101 (2d Cir. 2014). An ALJ's finding as to whether a claimant's impairment meets or equals a listing "must reflect a comparison of the symptoms, signs, and laboratory findings about the impairment, as shown in the medical evidence, with the medical criteria as shown with the listed impairment." *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002) (citing 20 C.F.R. § 404.1526).

If a claimant's impairment or combination of impairments does not meet the specific criteria of a listing, it still may be found to equal that listing. *Norman v. Astrue*, 912 F. Supp. 2d 33, 77 n.71 (S.D.N.Y. 2012). A claimant's impairments will be considered medically equivalent if they are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). Where, as is the case here, a claimant has an impairment described by a listing and either does not

13

exhibit one or more of the findings specified in that particular listing, or exhibits all of the findings specified in the listing, but one or more of the findings is not as severe as specified in the listing, medical equivalence will be found if other related findings "are at least of equal medical significance to the required criteria." *Id.* § 404.1526(b)(1). In determining whether an impairment medically equals a listing, an ALJ must consider all evidence in the record concerning the impairment and its effects on the claimant. *Parks v. Comm'r of Soc. Sec.*, No. 19-CV-00505, 2020 WL 3542123, at *5 (W.D.N.Y. June 30, 2020) (citing 20 C.F.R. § 404.1526(c)). A claimant carries the burden of proof at Step Three to show that his impairments medically equal a listing. *See id.*, at *3 (citation omitted).

Social Security Ruling ("SSR") 17-2p[10] explains that, in order for an ALJ to demonstrate the required support for a finding of disability at Step Three based on medical equivalence, the record must contain specific evidence supporting that finding, in the form of either: a prior administrative medical finding from a federal or state agency medical consultant or psychological consultant from the initial or reconsideration levels; medical expert evidence obtained at the hearings level, including testimony or written responses to interrogatories; or a report from the Appeals Council's medical support staff. SSR 17-2p, 2017 WL 3928306, at *3.

While Dr. Ringel and Dr. Fette considered Claimant under Listing 4.02 at Step Three, both concluded that an RFC assessment was required in Claimant's case, indicating their opinions that Claimant neither meets nor medically equals Listing 4.02. (*See* R. 77, 84, 93, 100.) The ALJ did not receive any medical expert testimony

---

[10] Social Security Rulings are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35.

or written interrogatories about whether Claimant's impairments medically equal Listing 4.02 at the hearing level of proceedings, nor does the record contain a report from the Appeals Council's medical support staff evaluating medical equivalence, *see* SSR 17-2p, 2017 WL 3928306, at *4, since the Appeals Council denied Claimant's request for review, (R. 5.)  Claimant has not met his burden of proving that his impairment medically equals Listing 4.02 because the record does not contain either a prior administrative medical finding from the state agency medical consultants, medical expert testimony or written responses to interrogatories obtained by the ALJ at the hearing level, or a report from the Appeals Council's medical support staff, that supports a finding of medical equivalence, as is provided for in SSR-17-2p. Therefore, the Court finds no error in the ALJ's analysis at Step Three.

### B.   Evaluation of Medical Opinions

Claimant's next argument is that the ALJ failed in his evaluation of the medical opinions in the record.  (Pl.'s Mem. 6–11.)  Specifically, Claimant contends that the ALJ erred by substituting his own opinion with that of Claimant's treating specialist, Dr. Sheynberg, and by improperly weighing Dr. Sheynberg's medical opinion against his own treatment records.  (*Id.* 8–9.)  Claimant asserts that, where the basis for a treating physician's opinion is unclear, and to the extent that the ALJ did not understand either Dr. Sheynberg's opinion or the significance of his treatment notes, the ALJ should have sought clarification from medical sources or a medical expert. (*Id.* 7–8.)  Further, Claimant argues that the ALJ improperly assessed the opinions of the state agency medical consultants, Dr. Ringel and Dr. Fette.  (*Id.* at 8–9.)  He claims that the ALJ's rejection of the limitation that Claimant can only stand and/or walk up

to a total of two hours, opined by both Dr. Ringel and Dr. Fette, was unsupported by the evidence in the record.  (*Id.*)  By discounting every medical opinion available, which Claimant maintains are consistent with each other and the medical record, he contends that the ALJ committed legal error in finding Claimant could stand and/or walk up to a total of four hours.  (*Id.* at 6–10.)  Claimant seeks a new hearing so that the ALJ may evaluate the medical opinions in accordance with the regulations and not his own lay judgment, or alternatively, since the ALJ assigned little to no weight to all of the medical opinions available, so that the ALJ may develop the record.  (*Id.* at 10–11.)

The Commissioner responds that much of the caselaw cited to by Claimant does not apply in this case because Claimant filed his applications after regulatory changes deviated away from the treating physician rule.  (Def.'s Mem. 9–10.)  Under the new regulations, presumptive weight is no longer assigned to the opinions of treating physicians, and the Commissioner therefore argues that the ALJ satisfied the new regulation's requirement that an ALJ base and explain persuasiveness determinations on the most important factors of supportability and consistency.  (*Id.* at 10); *see* 20 C.F.R. § 404.1520c(a).  The Commissioner argues that the Court must defer to those findings because substantial evidence supports the ALJ's findings on the persuasiveness of the medical opinions of record.  (Def.'s Mem. 12.)

For claims filed on or after March 27, 2017, such as Claimant's, the treating physician rule no longer applies.  20 C.F.R. § 404.1520c; *see generally* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017).  However, before reaching the substantial evidence inquiry, the Court must

first consider the threshold issue of whether the ALJ satisfied his duty to develop the administrative record.  *See Russ v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 162 (S.D.N.Y. 2022) (citing *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).  While the ALJ was not bound under the current regulations to defer to the opinion of Dr. Sheynberg as Claimant's treating physician, the ALJ's affirmative duty to develop the record nonetheless remained when Dr. Sheynberg's medical opinion was incomplete in the record.

Dr. Sheynberg's opinion was presented in the administrative record through at least two Social Security Administration Office of Disability Adjudication and Review forms titled "Medical Source Statement of Ability to do Work-Related Activities," one identified "Physical" and another "Mental."[11]  (R. 333–41.)  It cannot be ascertained how many Medical Source Statements were completed by Dr. Sheynberg, or when each were completed, because the Statements are incomplete.  (R. 334–38.)  The original pagination on the documents reads Pages 1, 3, 1, 3, and 5, and only the second page has a signature line, which was signed and dated by Dr. Sheynberg on August 6, 2020.  (R. 334–38.)

---

[11] The nine-page exhibit containing Dr. Sheynberg's medical opinion via the Medical Source Statements also contains a letter dated June 9, 2020 from Dr. Sheynberg to Claimant's primary care physician, Dr. Tao-Nan Chi, and a copy of an electrocardiogram performed on that same date.  (R. at 333–41.)  While the letter to Dr. Chi and attached electrocardiogram were perhaps intended by Dr. Sheynberg to supplement the Medical Source Statements as additional opinion evidence, "these records consist of notes, clinical findings, and test results, which are properly classified as either objective or other medical evidence[,]" and as such they do not constitute part of a "medical opinion" under the regulatory definition.  *Gaetana M. v. Kijakazi*, No. 20-CV-01569, 2022 WL 897150, at *7 (D. Conn. Mar. 28, 2022); *see* 20 C.F.R. § 404.1513(a)(2) (defining a medical opinion as a statement from a medical source about what a claimant can still do despite any impairments, and whether the claimant has one or more impairment-related limitations or restrictions in the ability to perform physical work demands, such as standing and walking; to perform mental work demands; to perform other work demands, such as seeing, hearing or using other senses; and to adapt to environmental conditions).

Inconsistent pagination aside, a close examination of the content of the Statements shows that pages are missing.  For example, the section assessing mental limitations ends abruptly when the next page proceeds to discuss use of hands and feet.  (R. 336–37.)  Furthermore, none of the pages available in the record speak to a number of activities that would ordinarily be expected on a Medical Source Statement, such as standing and walking.    (*See* R. 334.)  This is not an obscure omission, as the Medical Source Statements Dr. Sheynberg completed are commonly used forms, produced by the Social Security Administration for a specific purpose of facilitating procurement of medical opinions by ALJs.[12]  The ALJ should have been aware that assessments of standing and walking, which are typically included in a Medical Source Statement on physical abilities,[13] were missing from Dr. Sheynberg's forms. *See Sheila W. v. Comm'r of Soc. Sec.*, No. 21-CV-211, 2022 WL 3908809, at *6 (N.D.N.Y. Aug. 30, 2022) (rejecting the Commissioner's argument that an ALJ "had no reason to assume that pages were missing" from a Medical Source Statement that was missing content typical of Medical Source Statements).

The absence of the pages presumably containing Dr. Sheynberg's opinion on Claimant's ability to stand and walk becomes even more damaging, in light of the ALJ's rejection of the standing and walking limitations indicated in the only other medical opinions in the record.  Presumably before discarding the findings of Dr.

---

[12] *See* Administrative Law Judge Requests Completion of Medical Opinion Forms, SSA POMS § DI 29501.015.

[13] Social Security Administration Office of Disability Adjudication and Review Form HA-1151-BK, "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" (effective 01-2015), which appears to be substantially identical to the form completed by Dr. Sheynberg, has a section on page 2 of 7 for the assessment of how long a claimant can stand and walk.  The pages available of Dr. Sheynberg's Medical Source Statements do not include a page 2.  (*See* R. at 334–48.)

Ringel and Dr. Fette speaking to how long Claimant is able to stand and walk, the ALJ should have observed that the opinion of Dr. Sheynberg was conspicuously missing findings on those limitations.

A medical opinion that is missing pages creates a deficiency in the record that warrants remand.  *See Angelica M. v. Saul*, No. 20-CV-00727, 2021 WL 2947679, at *9 (D. Conn. July 14, 2021) (finding that the ALJ should have solicited an updated opinion from the claimant's therapist where pages from her medical source statement were missing, and remanding with instruction to do so); *see also Bogner v. Comm'r of Soc. Sec.*, No. 20 Civ. 10724, 2022 WL 16701197, at *12 (S.D.N.Y. July 18, 2022) ("[T]he ALJ should have solicited additional information where the record contained an unclear or incomplete treating source opinion." (citing *Angelica M.*, 2021 WL 2947679, at *9)), *report and recommendation adopted*, No. 20 Civ. 10724, 2022 WL 4752464 (S.D.N.Y. Sept. 30, 2022).  The rule in the Second Circuit imposes an affirmative duty on the ALJ to develop the record, arising from the regulatory obligation to develop a complete medical record before making a disability determination.  *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); 20 C.F.R. § 404.1512(b)(1).  Failure to develop the record is reversible legal error.  *Mirna C. v. Kijakazi*, No. 21-CV-1296, 2022 WL 4285694, at *2 (D. Conn. Sept. 16, 2022) (quoting *Diana P. v. Kijakazi*, No. 20CV837, 2021 WL 4305005, at *7 (D. Conn. Sept. 22, 2021)).

There was other medical opinion evidence available in the record, that being the findings offered by Dr. Ringel and Dr. Fette, from which the ALJ could have reached a conclusion regarding Claimant's limitations in standing and walking.  But

the ALJ discarded those findings, leaving him to "fashion a specific RFC limitation from whole cloth" when every medical source available in the record opined to more restrictive limitations. *Gary F. v. Comm'r of Soc. Sec.*, No. 20-CV-6735, 2022 WL 16540354, at *5 n.14 (W.D.N.Y. Oct. 28, 2022). The issue here is not that the ALJ's four-hour standing and walking limitation does not "perfectly correspond" with those of Dr. Ringel and Dr. Fette: the issue is that it "completely departs" from them, which were the only functional assessments speaking to those limitations in the record. *See Vellone v. Saul*, No. 20-CV-00261, 2021 WL 319354, at *10 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Vellone on behalf of Vellone v. Saul*, No. 20-CV-261, 2021 WL 2801138 (S.D.N.Y. July 6, 2021).

The reasoning provided by the ALJ for dismissing the two-hour standing and walking findings indicated by Dr. Ringel and Dr. Fette further demonstrates why an opinion from Dr. Sheynberg on these limitations is necessary. The ALJ concluded that Dr. Ringel and Dr. Fette's findings were "not consistent with the findings for only trace edema and normal gait,"[14]  (R. at 30), but he did so without any explanation of

---

[14] The Court notes that not only did the ALJ fail entirely to explain or even acknowledge the important factor of supportability in his explanation of how he considered the persuasiveness of the opinions of Dr. Ringel and Dr. Fette, which on its own could constitute reversible error, *see Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) (citing *Andrew G. v. Comm'r of Soc. Sec.*, 2020 WL 5848776, at *9 (N.D.N.Y. Oct. 1, 2020)) ("If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases [his] explanation upon a misreading of the record, remand is required."), *report and recommendation adopted*, No. 19-CV-4630, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021), the ALJ also failed when explaining how he considered the important factor of consistency in regards to the opinions of Dr. Ringel and Dr. Fette, as there is no indication in the ALJ's explanation that he accounted for the identical consistency between the two medical consultants' standing and walking findings. *See Tammy J. v. Comm'r of Soc. Sec.*, No. 21-CV-00107, 2022 WL 3714668, at *5 (S.D.N.Y. Aug. 29, 2022) (concluding the ALJ's consideration of the medical opinion evidence was not supported by substantial evidence where "[t]he ALJ gave no indication that he accounted for the significant correspondence and consistency among the treating and examining source opinions."); *see also Gary F.*, 2022 WL 16540354, at *3 (finding that remand was

"how having a normal gait during a physician's examination equates to the ability to stand and walk" up to four hours a day. *Ahmed A. J. v. Saul*, No. 18-CV-00197, 2019 WL 4671513, at *6 (N.D.N.Y. Sept. 25, 2019). Meanwhile, the medical record is replete with findings for fatigue,[15] dyspnea,[16] shortness of breath or shortness of breath on exertion,[17] and dizziness,[18] any of which might reasonably be expected to limit a person's capacity to stand or walk. Notably, Dr. Ringel's opinion found that the objective medical evidence substantiated Claimant's statements about the intensity, persistence, and *functionally limiting effects* of Claimant's symptom of shortness of breath. (R. 77, 84.) And both Dr. Ringel and Dr. Fette explained their findings that Claimant is limited to standing and/or walking up to a total of only two hours per eight-hour workday precisely because of Claimant's cardiomyopathy. (R. 78, 85, 94, 101.)

The facts of this case are similar to those in *Gary F. v. Commissioner of Social Security*, No. 20-CV-6735, 2022 WL 16540354 (W.D.N.Y. Oct. 28, 2022), where two of the three medical opinions in the record explicitly found a limitation of standing or walking no more than two hours per workday. In *Gary F.*, despite the consistency of the medical opinions in the record, the ALJ nevertheless found that the claimant could perform light work and stand or walk up to four hours per workday: a determination which the court found to be "beyond the expertise of a lay ALJ." *Id.* at *5 n.14 (citing *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)). As the court there

---

necessary where the ALJ erred by not acknowledging "substantial similarities between two physicians' opinions).

[15] *E.g.*, R. 350, 367–68, 739, 778.
[16] *E.g.*, R. 316, 339, 419, 537, 558, 739, 757.
[17] *E.g.*, R. 350, 368, 416, 537, 549, 557, 679, 814.
[18] *E.g.*, R. 339, 349–50, 367–68, 557, 814.

aptly explained, "that specific limitation contradicts the medical opinions limiting [Claimant] to standing and walking for no more than two hours.  So there is no medical support for the ALJ's lay opinion that [Claimant] can stand or walk for four hours, as opposed to, say, three or five."  *Id.* at *5.  Further, the court in *Gary F* explained that "when the record provides no support for the specific amount of time that a claimant can [walk] or stand without relief, a specific finding toward that end is not supported by substantial evidence."  *Id.* (quoting *Theresa W. v. Comm'r of Soc. Sec.*, No. 20-CV-704, 2021 WL 4324421, at *4 (W.D.N.Y. Sept. 23, 2021)); *cf. Tomicki v. Berryhill*, No. 15-CV-847, 2018 WL 703118, at *5 (W.D.N.Y. Jan. 11, 2018) ("[T]he record does not support the ALJ's conclusion that [the claimant] needs to briefly switch between sitting and standing only every thirty minutes.  The ALJ did not cite any evidence to support this highly-specific sit-stand option, . . . making it unclear to the Court how the ALJ arrived at this particular finding."), *report and recommendation adopted*, No. 15-CV-00847, 2018 WL 692141 (W.D.N.Y. Feb. 1, 2018).

An ALJ may not "us[e] [his] own lay opinion[] to fill evidentiary gaps in the record."  *Russ*, 582 F. Supp. 3d at 164 (quoting *Manzella v. Comm'r of Soc. Sec.*, No. 20-CIV-3765, 2021 WL 5910648, at *14 (S.D.N.Y. Oct. 27, 2021), *report and recommendation adopted*, No. 20-CV-3765, 2021 WL 5493186 (S.D.N.Y. Nov. 22, 2021)) (finding where no medical opinion supported the ALJ's conclusion, the ALJ "impermissibly substituted his own medical opinion—exactly what he was not entitled to do.").  After eliminating Dr. Ringel and Dr. Fette's findings, "[t]he only way that the ALJ could have reached his conclusion . . . was "to make his own, inexpert interpretation of the functional implications of [Claimant's] tests and treatments."

*Robles v. Saul*, No. 19-CV-1329, 2020 WL 5405877, at *6 (D. Conn. Sept. 9, 2020).  But an ALJ is not permitted to "connect the dots" between raw medical data and a claimant's functional limitations all on his own.  *Id.* (citing *Quinto v. Berryhill*, No. 17-CV-00024, 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017)); *see also Riccobono v. Saul*, 796 Fed. App'x 49, 50 (2d Cir. 2020) ("[T]he ALJ cannot arbitrarily substitute [his] own judgment for competent medical opinion." (quoting *McBrayer v. Sec'y of Health & Hum. Servs.,* 712 F.2d 795, 799 (2d Cir. 1983))).

The obvious and significant gap in the record resulting from Dr. Sheynberg's incomplete Medical Source Statements and the ALJ's decision to discard Dr. Ringel and Dr. Fette's findings on how long Claimant is able to stand and walk[19] left the remaining medical record lacking sufficient information from which the ALJ could have reached an informed decision as to Claimant's exertional capacity.  *See Mirna C.*, 2022 WL 4285694, at *3 (citing *Robles*, 2020 WL 5405877, at *6).  This gap exposes "a host of lost opportunities" for the ALJ to develop the medical opinion evidence.  *See Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  By foregoing these opportunities, the ALJ committed legal error, and because the limitations opined by Dr. Ringel and Dr. Fette "suggest that

---

[19] While the standing and walking limitations found by Dr. Ringel and Dr. Fette were the only findings rejected by the ALJ, these are not insignificant findings, considering the ALJ's conclusion that Claimant is capable of light work with limitations.  Where a claimant is limited to a sedentary level of exertion, periods of standing or walking "should generally total no more than about" two hours of an eight-hour workday.  SSR 83-11, 1983 WL 31251, at *5.  On the other hand, a job is categorized as light work "when it requires a good deal of walking or standing," 20 C.F.R. § 404.1567(b), which totals approximately six hours of an eight-hour workday.  SSR 83-11, 1983 WL 31251, at *6; *see Michaels v. Colvin*, 621 Fed. App'x 35, 40 (2d Cir. 2015).  The Commissioner's own policies state that whether a job requires a "good deal of standing or walking" is "the primary difference between sedentary and most light jobs."  SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983).  As Claimant argues, the difference between an RFC of sedentary exertion and light work could possibly be dispositive in his case.

[Claimant] cannot perform the level of work the [ALJ's] RFC contemplates[,]" and their opined limitations "could have resulted in a finding of disability—or at the very least a more restrictive RFC finding—if given weight by the ALJ," the ALJ's error was not harmless.  *Gary F.*, 2022 WL 16540354, at \*5 (quoting *Manuel v. Comm'r of Soc. Sec.*, No. 19-CV-00023, 2020 WL 2703442, at \*4 (W.D.N.Y. May 26, 2020)); *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502, 2021 WL 363682, at \*7 (S.D.N.Y. Jan. 29, 2021) (citing *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)) ("An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case."), *report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022).   Therefore, remand is necessary for further development of the record.  The ALJ is instructed on remand to obtain a complete medical opinion from Claimant's cardiologist and any other such evidence consistent with this decision that would facilitate the determination of Claimant's accurate RFC.

### C. Evaluation Under the Grid Rules

The errors discussed above necessarily flow into Claimant's final argument: that because the ALJ declined to credit the limitation that Claimant can stand or walk no more than a total of two hours, the ALJ erred by finding that Claimant has the RFC to perform light work with limitations rather than finding that Claimant is limited to sedentary exertion.   (Pl.'s Mem. 14.)   Had the ALJ recognized the two-hour limitation found by Dr. Ringel and Dr. Fette, Claimant contends that his limitations would have directed a finding that he is capable of only sedentary work, and therefore he has been disabled under the Medical Vocational Guidelines ("the

24

Grids") Rule 201.14 since December 16, 2019, the date of his fiftieth birthday.  (*Id.* at 14–15.)  The Commissioner's briefing pushes Claimant's Grids argument to the side since it is dependent on the success of Claimant's previous arguments.  (*Id.*)  Due to the necessary remand for the ALJ to develop the record, the Court must also put this issue to the side.

An ALJ must make findings at each of the first four steps of the sequential evaluation process before applying the Grids to a claim.  *See* SSR 83-11, 1983 WL 31252, at *2 (Jan. 1, 1983) ("[W]hether the criteria of a rule are met is based on judgments that have previously been made regarding the individual's RFC, age, education, and work experience.").  Therefore, the Commissioner is correct that the success of Claimant's Step Five argument is necessarily dependent on the success of his previous arguments, because the Grids only come into play after the ALJ has made findings at Step One through Four.  *See id.*  The Court cannot assess at this time whether the Grids dictate a finding that Claimant is disabled since whether the RFC determined by the ALJ is supported by substantial evidence remains to be seen. Because further development of the record is necessary for the ALJ to properly evaluate Claimant's RFC, the Court is unable to address Claimant's argument here any further than conjecture.

Whether or not Claimant is capable of sedentary exertion and therefore should be found to be disabled under Grid Rule 201.14 is a question for the ALJ with the benefit of a complete medical record.  In light of the remand necessary to cure the previously discussed legal errors, the Court is unable to definitively resolve whether

the ALJ erred in not finding that Claimant is limited to sedentary exertion, or that he is disabled under the Grid rules.

**IV.     CONCLUSION**

For the foregoing reasons, Claimant's Motion for Order Reversing the Decision of the Commissioner is GRANTED, Claimant's Motion in the Alternative for Remand for a Hearing is GRANTED, and the Commissioner's Motion for an Order Affirming the Decision of the Commissioner is DENIED.  This case is REVERSED and REMANDED for additional proceedings consistent with this decision.

IT IS SO ORDERED.

_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: January 20, 2023